Number 13, 15, 17, Graham versus the National Union Fire Insurance Company of Pittsburgh. Mr. Carey, it's good to see you and Mr. Parker back. We're always happy to come back. May it please the Court, I'm here today on behalf of Robert Graham, the plaintiff below, who appeals an order of the District Court granting partial summary judgment to the defendant below National Union and denying partial summary judgment to the plaintiff, Mr. Graham. This appeal presents two issues for the Court. The first is whether Graham, as a first party insured in a suit against his insurer regarding its duty to defend under a Wrongful Liability Act insurance policy, is entitled to damages for aggravation and inconvenience under West Virginia law. The second issue for the Court is whether Graham is entitled to prejudgment interest on his special damages obtained in this action, that being the award of the underlying attorney's fees he incurred in defending the state suit for which the policy wrongfully denied coverage. Well, let me ask you this question. I've been trying to think of a simple way to get to the point, because what you're trying to do is to expand the Hayseeds line of cases to third party coverage. First party coverage is generally contractual in nature. I buy health insurance, I buy collision insurance, I buy disability insurance, and I expect to get paid. And therefore, if you mess with me, then that's why Hayseeds allows aggravation and inconvenience as damages in the first party insurance. You buy third party insurance to protect yourself, your agents, your servants, your officers and directors from liability, which is a tort-sounding issue. And so therefore, am I right in the analysis? That's the analysis that was undertaken by the District Court. Well, and you disagree with me. Oh, absolutely, and I'll jump right into that issue, because that's the crux of this case. In the District Court's ruling, where it found that Mr. Graham was not entitled to aggravation and inconvenience, the Court first discussed the definitions of first party and third party insurance. And there's a dearth of cases in West Virginia dealing with the definitions of those two things, first party and third party, in the context of Hayseeds. The Court primarily relied upon treatises and said, just as you did, Judge Floyd, the first party is that insurance that covers injury to the person or property of the insured, whereas third party insurance is to cover, to indemnify for liability arising out of an injury to a third person. The Court then examined three Hayseeds cases, the first being Petrolo, which was an automobile insurance case in which the insurance company denied coverage, plaintiff brought suit, and the District Court awarded the plaintiff the underlying attorney's fees in defending the cases plus his attorney's fees in bringing the action, the coverage action. There was no discussion on appeal about any consequential damages for aggravation and inconvenience. The next case was Hayseeds, a property insurance case where a restaurant bar- Was there any claim for aggravation? There's no indication in the record in Petrolo that there was even a claim for it. Nothing in the record suggests it was even asked for. Now, there's no indication. Can you represent that there was no claim? In Petrolo- It was never mentioned in Petrolo. Never mentioned. Not mentioned that it was even asked for in the District Court, in the trial court. In Hayseeds- Which was what, six months later? Nine months about, Your Honor. Hayseeds, the restaurant burned, they denied coverage, the plaintiff brought suit, and at trial obtained a judgment for the value of the restaurant, his attorney's fees in bringing the case, the consequential damages, including aggravation and inconvenience, and punitive damages. And on appeal, the Supreme Court said punitives were not appropriate in this case because there was no trial about the bad faith conduct, but instead the plaintiff is entitled to Hayseeds damages and awarded aggravation and inconvenience for the hassle of dealing with his insured and having to bring suit. Now, that brings us to the next case, and this is where Judge Floyd, I believe the judge favored the District Court, focused on the difference between first-party insurance and third-party. In Marshall v. Sassine, the insurance company denied coverage under an underinsured portion of an amicable policy. It went to trial, and a jury verdict was rendered in excess of the policy limits, and the court ruled as a matter of law that the plaintiff was entitled to bad faith damages. On appeal, the Supreme Court reversed on bad faith but ruled that he was entitled to Hayseeds damages, and this is the language at issue. In Marshall v. Sassine, the court said the critical point is both property and underinsured motorists are first-party insurance. And the District Court said, okay, that's the key. If it's first-party insurance, you get Hayseeds. And then the District Court applied its definition of first-party insurance, but it's clearly not the definition of first-party insurance that the Supreme Court meant. If you look at Marshall, it was decided on November 2, 1994. Three weeks later, the Morrison case was issued by the West Virginia Supreme Court, almost an identical issue. The only difference was it was uninsurance versus underinsurance coverage. And this is the key language, and this is in the Morrison case. Our opinion in Marshall explained that uninsured and underinsured motorist coverage is essentially first-party coverage. This is because the insurer, through the insurance policy with its insured, has contracted to extend such insurance. Our conclusion in Marshall was predicated on several of our earlier cases which dealt with first-party insurance. And the very case they discuss is Petrollo. So the West Virginia Supreme Court, three weeks later, is characterizing Petrollo as a first-party insurance case because he had a contract of insurance and automobile liability policy. The next thing they say is, after Petrollo, we followed with Hayseeds. So it's clear that when the West Virginia Supreme Court and Marshall used the phrase first-party insurance, they meant that there was a contractual relationship. In fact, if you look at all the cases subsequent to there, it's clear that when the court determines to award Hayseeds damages, it's because of the first-party contractual relationship. And the hassle that an insured has to go through to get his coverage. Even Marshall said that first-party insurance means that the insurance has directly contracted with the insured to provide coverage and to reimburse insured for his damages up to policy limits. Provide coverage. This was a duty to defend coverage under a wrongful act liability policy. Marshall further said, the premise underlying Hayseeds was that the insurer contractually promised the insurer that coverage. And so it's that contractual relationship. If you look at Hayseeds itself, it says that you don't have to show bad faith or good faith in the insurance denying the coverage. You simply get the benefit. In either case, the insured is out his consequential damages and attorney fees. To impose upon the insured the cost of compelling the insured to honor its contractual obligation is to effectively deny him the benefit of the bargain. Elmore case states, Hayseeds type action is grounded on the existence of a contract between an insurer and its insured from which the duty of good faith and fair dealing arises. The Miller v. Fluharty case. When an insurance carrier refuses to pay any type of first party claim, they're focusing on the first party status, the contractual relationship, the claim for benefits. The policyholder may be compelled to participate in lengthy litigation. And it goes on to say, the policy underlying Hayseeds and Marshall is that a policyholder buys an insurance contract for peace of mind and security, not financial gain and certainly not to be embroiled in litigation. The goal is for all policyholders to get the benefit of their contractual bargain. They should get their policy proceeds promptly. Another case where they awarded Hayseeds damages. Loudon. Miller and Hayseeds echo a firm public policy of the state to hold insurers accountable when they wrongfully deny coverage. I'm not asking for an extension of Hayseeds. It is true that there is no reported decision out of the Western Insurance Court specifically dealing with wrongful act liability coverage. But the policy has been stated over and over again. When a person buys a policy of insurance and the insurance company wrongfully denies coverage and the insured has to bring a lawsuit and he substantially prevails, he's entitled to the aggravation and inconvenience arising from that denial. There is no less reason to say that an insured under a liability policy is due less protection than a person who is an insured under a property policy. Here, Mr. Graham had to endure the state lawsuit, as this court knows, was filed in 2004. He had to endure five, after denying coverage, he endured five years of paying for his own lawyer on an hourly basis to defend him. He incurred substantial debt and the district court awarded him his underlying amounts and he should be entitled to the aggravation and inconvenience for having to go through now nine years before he gets his money. If I may turn to the prejudgment interest issue. The district court awarded reimbursement for two categories of attorneys fees. $200,000 for the defense of the underlying state case plus a contingency fee of $69,000 on the coverage case where we've been here. What Hasey says, it kind of creates a one-third presumption or something. One-third presumption and we had a contingency fee contract in this case and the court said that's going to be the basis of the fee. Nobody's disputing that. No one's disputing either of those amounts. In fact, the defendant agreed that the $200,000 was proper. They said that in their summary judgment response. We agree we owe the $200,000. We're only seeking prejudgment interest on that $200,000, not the cost, not the attorney's fees associated with bringing the coverage case. And 56-6-31 states that if there is a judgment or decree for special damages as defined below or liquidated damages, it shall bear prejudgment interest. Special damages includes costs, includes lost wages, income, medical expenses, damages to personal property, and similar out-of-pocket expenses. And in the Groves case, the court said that that phrase, similar out-of-pocket expenses, was meant to exclude general damages and states that prejudgment interest is mandatory on special or liquidated damages if they are certain or readily ascertainable. So to get you where you get prejudgment interest, we have to buy into your argument that the DNO policy was a contract action. If it's not, then you're not entitled to prejudgment interest. Well, I wouldn't say I'm not, but it is a contract action, Your Honor. In fact, in the Chafin case, the West Virginia Supreme Court said traditionally prejudgment interest is awarded on special damages in contract actions. It is a breach of contract action. They breached their duty to defend. He's an insured under that policy. Yes, and that's how we brought him. And they didn't cover him or didn't defend him, and you had to sue the company to get them to do it. That's correct, Your Honor. The only case cited by the district court is the Chafin case. The Chafin case was a public official who got indicted. He successfully defended the charges, and under a common law mandamus action, he asked for recovery of his attorney's fees. Those weren't special damages arising from a breach of contract. They weren't even out-of-pocket expenses related to the conduct of the person for whom he was asking reimbursement. It was the grand jury that indicted him, but he was seeking reimbursement from the county commission. And the Supreme Court said he was one of the commissioners. He's one of the commissioners. I assume he recused him. The Supreme Court said we're not convinced that the court erred in finding that these were not the type of out-of-pocket expenses contemplated by the statute. Here they clearly are. It's just that the special damages in this case happens to be attorney's fees. They breached their contract. They failed to provide the defense. He incurred over $200,000 in damages. Those were awarded. They were ascertainable. They agreed to the amount we're entitled to pre-judgment interest. Otherwise, the defendants have had the beneficial use for nine years of $200,000 without fees. Now that aspect of your case would be ascertainable if we were to agree with you. That first part, that annoyance and inconvenience, wouldn't be ascertainable. If we agreed with you on that, you'd have to have a trial? You'd have to have a trial on those damages. You've got a claim in here, some kind of a number. What kind of evidence comes in in West Virginia to prove annoyance and inconvenience in connection with a failure to defend case? It would be basically the testimony of the plaintiff himself. How much are you worried about it? Pardon me? How much are you worried about it, the stress and all that? I don't know what they do. I guess they've done them before, haven't they? I'm assuming that's the case, Your Honor. That's how we plan on doing it, putting the plaintiff on. Thank you, Mr. Carey. Thank you. Mr. Parker? Good to have you back, sir. It's good to be here, Your Honor. Thank you. May it please the Court, I'm Don Parker here for National Union. Let me first start with the aggravation and inconvenience damages issue. You know, Judge Floyd, I think you're right on target here. The main problem with what Mr. Carey is asking you to do is that it is an expansion of existing West Virginia law. And being a federal court, sitting in diversity, that's not something you're supposed to do. I mean, Judge King, in the last case, you were spending a fair amount of time telling the lawyers that very point, that you're not supposed to make new law or expand existing law when it comes to diversity cases. Sometimes it's difficult to figure out what the law is. And Mr. Carey quoted a case that involves that. I think it's the Liddy case. This is not one of those cases. This is a case where the law is pretty clear. It just doesn't go as far as Mr. Carey would like it to go. Do you agree that there was no claim in Petrolo for aggravation and inconvenience? I know it's not mentioned, Your Honor. I know it's not mentioned. But here's the interesting thing. Take the Hayseeds case. And Hayseeds is the one that brought it up. Yes, that's exactly right. Justice Neely. And Hayseeds took a specific turn when it comes to West Virginia common law, bad faith law, the whole point being that they didn't want to go down the same road that other states would go down and worry about, you know, did the insurance company have a justifiable basis for their position. The Supreme Court just said, we don't want to mess with that. We just want to say if the plaintiff wins, then these are the kind of damages you get regardless of whether the insurance company had good intent or bad intent. So that was the whole point of Hayseeds. Well, but that was nine months after the Petrolo case. The Petrolo case is right on point here. I mean, it is the case about a fight between the insurance company and the insured over the duty to defend in a liability insurance situation. And the Supreme Court, using syllabus points, defined what the law is in that regard. The court has never in 27 years gone back to change that law. So that is the law that's out there. When the Supreme Court decided to expand Hayseeds, this is very important. The case that expanded it was Marshall v. Sassine. The court did it with a syllabus point. When they expanded Hayseeds? Yes, Your Honor. When the court expanded Hayseeds to apply to underinsured and uninsured motorist coverage, it did so with a syllabus point. I know that Judge King is familiar with this, but Judges Gregory and Floyd, I'm sure you are too. You handle West Virginia cases. Our Constitution in West Virginia requires the Supreme Court, when it's going to issue new law, to do so via syllabus points. And so if the court is going to expand the law in West Virginia, the common law, it has to issue syllabus points. Well, when the Supreme Court expanded Hayseeds to deal with uninsured and underinsured motorist coverage, it did so via a syllabus point in the Marshall v. Sassine case. The court has never gone back and revisited the issue of what to do when it comes to liability insurance fights. Now, that doesn't mean the court has never dealt with liability insurance. We also have law that deals with liability insurance in the context of excess judgments. In other words, I'm insured under the insurance policy. Somebody's suing me. They're suing me for a lot more money than my insurance policy covers. We have law. Lots of states have this law. But in West Virginia, it's called the Shamblin case. And there's a very specific test for what's supposed to happen when the insurance company has an opportunity to settle a case against a liability insurance insured but fails to take advantage of that opportunity, and then there is, in fact, an excess judgment over policy limits. Then they're liable for the difference. They're liable for the difference and maybe some damages on top of that. It is expressed in terms of a prima facie bad faith case by the insured against the insurance company for whatever that excess is. And oftentimes, that gets assigned over to the plaintiff, but that's neither here nor there. The point being that there's a completely different test by our Supreme Court about what to do when it comes to liability insurance in that situation. So really when you get down to it, bad faith law in West Virginia is situational. What I mean by that is this. There are general principles that overlie all of this. And one of Mr. Carey's points that I agree with is that there is a stream of cases in West Virginia that talk about the general principles that apply when there are disputes between insurance companies and their insurers. That we agree with. The question, though, is how does that get implemented where the rubber meets the road? In a specific dispute, how does that get implemented? And it depends. I mean, the answer is it depends. If it is a property insurance case, it's hayseeds. When the Supreme Court expanded hayseeds to include uninsured and uninsured coverage, it did so via a syllabus point and it tweaked the language a little bit. It tweaked how you deal with it because there are some things that are different. Why isn't underinsured and uninsured coverage? That's first party coverage. It is. It is. Even though it arises out of a tort situation. Yes. And Judge Floyd, I want to make sure we talk about that. This whole question of some dispute that Mr. Kerry has with the definition of first party coverage and third party coverage. Do you all disagree on what that is? I think that he disagrees with me about how that splits out. And I agree with the district court on this. And I want to make sure we talk about why we disagree about it with Mr. Kerry. It is as simple as this. First party insurance is when Judge Floyd, I'm your insurance company. If a bad thing happens to you that's covered under the policy, I write a check to you. That's first party insurance. Third party insurance or liability insurance is I'm your insurance company and Judge King blames you for some injury he has sustained. In that situation, under a normal liability insurance policy, I do two things. I give you a lawyer and if it comes to it, I write a check to Judge King. That's the essence of the difference between first party coverage and third party coverage or liability insurance coverage. Our Supreme Court is not confused about this. I want to point you to... You don't have to. Why do you get into what Justice Benjamin wrote then? In the Loudon case, Your Honor? No, that's a dissent. I mean, we can't rely on a dissent in trying to decide what question your law is. You don't need to. The reason there was a dissent, obviously he disagreed with the majority on how to deal with the very unique situation that occurred in Loudon, which was that there was a person who owned an insurance policy, but he got injured by a permissive user of the vehicle. So that permissive user was another insured under the policy, but the owner of the policy was making a third party claim, a liability insurance claim against the permissive user. And so the question, and honestly, the question about who's a first party versus a third party, it always comes down to who gets to sue for bad faith. That's the whole point of having that question. And in Loudon, our Supreme Court said, well, if somebody bought the insurance policy, they ought to be able to sue for bad faith. Loudon is not any more complicated than that. Would you agree that Mr. Graham's a first party then? Oh, absolutely. There's no question about he is a first party. He is insured under this liability insurance policy. But Loudon doesn't have any impact beyond that here anyway. Milner versus Flewharty. This is interesting. Mr. Carey relies a great deal on Milner versus Flewharty. All of the things that he wanted to talk about, how he uses the term all policyholders should be protected, all of that is preceded by what I'm about to say on page 318. We begin by examining the duties of an insurance carrier towards a policyholder who has purchased an uninsured or underinsured motorist policy or any other type of first party insurance policy and who has sustained a loss covered by that policy. So everything the Court says is within those parameters. But here's where the Court goes on. And this is what clears up what Mr. Carey thinks is some sort of confusion at the Supreme Court about the difference between first party and third party insurance. Milner versus Flewharty, same page, 318, goes on to say, An underinsured motorist insurance policy, such as the one purchased by the plaintiff in this case, is first party insurance which is required to be offered to liability insurance policyholders by law. So the Court understood the difference between liability insurance and first party insurance. An auto policy, as you all know, is actually, I mean we all, practically all of us have an auto policy, but it's actually a more complicated policy than people give it credit for. It is a liability insurance policy, but it's also a first party coverage policy because, for instance, there's collision coverage. If you just run into a pole, nobody else is to blame. You're not blaming anybody else and nobody else is blaming you for their injuries, but you get money back from your own insurance company. That's a first party coverage. Underinsured and uninsured motorist coverage, that's a first party coverage because, again, in my example with Judge Floyd, I'm your insurance company. You get hurt, I write you a check. That's first party coverage. Well, here in Miller v. Fluharty, the part I quoted, our court is making it clear. An auto policy is mainly a liability insurance policy, but it has pieces of it that are first party insurance. So there's no confusion at the Supreme Court about what these terms mean. They understand the difference between liability insurance and first party insurance. And then they go right on after that sentence you wrote and then have a quote, first party insurance means, et cetera, incited to the Marshall case. Exactly, Your Honor. And that was Judge Starcher. Did he write the Marshall case too? I could check. I'm not sure. I don't know. I could check. Not that it makes a bit of difference, but I just wondered if he was, at that time, like the guru on this stuff up there. He did a lot of the decisions at that time, that's for sure. But, Judge King, it's good that you brought up that quote because that quote, Mr. Carey wants to focus on the first half of the quote and I want you to focus on the second half of the quote because I think it's the more pertinent issue here. The quote is, first party insurance means that the insurance carrier has directly contracted with the insured. That's the part Mr. Carey wants you to focus on. To provide coverage and to reimburse the insured for his or her damages up to the policy limits. Now, see, that's the part I would like you to focus on because that's what's really going on with first party coverage. I'm your insurance company, something bad happens to you, I write you a check, not the person who's blaming you for their injury. Now, here is the biggest problem with the expansion of West Virginia law that Mr. Carey is asking you to engage in. First of all, you shouldn't do it because you're a federal court sitting in adversity. But the second problem is there's baggage associated with taking Hayseeds, all of Hayseeds, and applying it to liability insurance. First of all, Judge, can you ask about the attorney fee? Well, as you know, in Hayseeds, there is an established procedure in the case for deciding what the attorney fee is going to be. One third, right? Well, it's not absolute, is it? It says presumptively or something. Presumptively, but the court has to follow that. That was Neely, he just pulled that out of the air. He sure did. He made it up. Judge Keene, you know that Justice Neely had a... Well, he had a routine contract, I guess, maybe back at that time, if you take on a contention fee case. He had a penchant for, he liked rules instead of tests. And so he liked that rule, just one third fee. Now, if the policy is, now, one third of what, though? One third of the face value of the policy? Well, that's the problem with liability insurance. There is no face value on the duty to defend. In a typical liability insurance policy, and including the one here... He was talking about one third of the, in that case, what they got back for having to defend it themselves. Well, no, one third of... Or what they had to spend out of pocket, like Mr. Carey's client did here, what he spent $200-some thousand to defend his case. So you all had to pay Mr. Carey $69,000. Well, it's not exactly like that, Your Honor. It's not? Okay. No. What happened with Mr. Carey's case is that there were two parts of his attorney fee. The first part was what Mr. Graham spent to defend himself in the civil case that the state of West Virginia brought against him. The second part is the part that is fee-shifting. In other words, under the Petrollo case, when Mr. Graham fights with the insurance company about coverage and wins, then he's supposed to get his attorney's fees. That's the second of the two syllabus points that are relevant here from Petrollo. Well, the problem with applying hayseeds to a liability insurance situation is that attorney fee computation, the one third of the face value of the policy, well, there is no face value to the policy that affects liability. I'm sorry, the duty to defend. The duty to defend is dealt with as a supplementary payment under the policy. If I have a million dollars in liability insurance and the insurance company has to defend me in a lawsuit in a normal liability insurance policy, there is no limit to the duty to defend. It's just not there. So, you know, what do you take one third up? And it's equally problematic if you try to take one third of the face value of the policy limit. What if I'm only getting sued for $50,000 but my policy limit is a million dollars? Do I get a $333,000 attorney fee? See, that's the problem. And there are answers to those questions. But those are answers that the Supreme Court of West Virginia is going to have to come up with. I don't think Neely was absolute. That's my recollection of it. I was in some of these hayseed cases along the way. What he said, Your Honor, was if it's extremely small or unusually large, the judge can vary from that and go use the, actually go back to Petrollo and use the Petrollo test for what the attorney fee should be. But here's the interesting thing. Hayseed was pretty clear on this there at the bottom in 29318. We therefore held, according to Judge Starcher, in Hayseed, that if a first-party policyholder substantially prevails against the insurance carrier in litigation, the policyholder is entitled to recoup his or her consequential damages resulting from the insurance carrier's delay in the payment of the claim. And then they restated Syllabus 0.1, as you pointed out, in Hayseed, which says that if the policyholder prevails against its insurer, the insurance is liable for, first, attorney's fees, and, second, the insurance damages for net economic loss caused by the delay in settlement and damages for aggravation and inconvenience. Yes. That's what they said. And that's in Marshall, correct, Your Honor? That's the one you're looking at? No, that's in Miller. I'm looking at Miller. In Miller, yes. You referred me to page 318 of Miller. Yes, Your Honor. And I was just following on from where you read us. Yes. But down on the bottom right of page 318 over to the top of 319, all of it is Justice Starcher restates what Justice Neely said in Hayseed and blocks in the entirety of the first syllabus point in the Hayseed case. All of which is dealt with either in Hayseed's property insurance case or Marshall v. Sassine, Miller v. Fluharty, and a score of other cases when it comes to underinsured motorist coverage. One of the cases I think would be useful to take a look at is one that has not come up in the briefs yet. I want to give you a citation for it. It's Richardson v. Kentucky National Insurance Company, 607 Southeast 2nd, 793. It's a 2004 case. The reason I bring it up is because it was a case where there was confusion at the trial level. It was an underinsured motorist case. There was confusion at the trial court level as to who ought to decide how much the attorney's fees are going to be. Should it be the jury or should it be the judge? Our Supreme Court decided that issue, that it should be the judge, and they did so in a syllabus point. They said, yes, it's up to the discretion of the judge, but we reiterate our holding in Hayseeds that it ought to be one-third of the face value of the policy unless it's unusually small or unusually large. So, Judge King, you're right. There's discretion at the trial level to deal with this, but there's discretion when it falls outside those parameters. If it's inside those parameters, our Supreme Court has said in syllabus point 5 of Richardson, we still stick with what we said in Hayseeds. It's got to be one-third of the face value. But my point is this, my larger point is this. If you take all of that, all that baggage about how you deal with the attorney fee, how you deal with the definition of what substantially prevailed means, there's a whole body of case law that deals with that in the context of underinsured motorist coverage. How do you take all that and apply it without any new law to a liability insurance situation? It's a square peg in a round hole, and it doesn't fit. Now, it can be done. It's just that that's for the West Virginia Supreme Court to do when it... Would you want us to certify this to the Supreme Court? You could if you want to. West Virginia? You haven't asked me for that. Judge Kerry asked... Mr. Kerry asked for that in the district court, and you objected to it. I did. I'm not saying that I'm not objecting to it. I'm saying, of course, you can choose to do that. But here's the question. Under your law, is there a novel issue that would be dispositive? I don't think there is. I think there's a pretty well-established body of law in West Virginia that answers the question, so I don't think you need to certify it. Let's go back to the damages question for a moment. I agree with Judge King, after thinking through it, that Mr. Graham isn't insured. Yes, Your Honor. And it's a first-party... He's... and I don't mean to interrupt, but he is a first party in third-party insurance. Correct. Yes. That's what I want to understand. Yes, Your Honor. I'm sorry if I interrupted you, but yes. That's why you say he can't get to those damages. That's correct. But he's a named insured in this policy. No, he is not. Well, he's named by position. He's... Named insured is a special term of art. Oh, it is? He is an insured by virtue of a definition. It insures what? The officers and directors? Yes, Your Honor. All right. What was he? He was an officer director. Yes. He meets the definition of the term insured. He was named insured in the policy, and he sued in connection with his... Those who... His bad conduct in connection with their alleged bad conduct in that capacity. We obviously agree he's an insured. That's what insured's for. Absolutely. But, you know, the question is, are you going to... Maybe he should have lost all along the line. But, you know, he had good lawyers, looks to me like. He dodged a lot of bullets. We have 16 seconds left. If I could take a short moment and mention my point on the participant interest. Here's the thing. In other states, what Mr. Kerry is advocating for, the idea that his damages are reasonably ascertainable, well, in other states, that's enough for the damages to be special damages and, therefore, prejudicial interest is available. That is not the law in West Virginia. In West Virginia, there's a statute, there's a list in the statute, and it's got to meet a term on the list. It's got to be lost wages or income or medical expenses, damages to tangible property, or similar out-of-pocket expenditures. Chafin is right on point. There's no difference... Did Chafin involve in insurance policy? No, but that shouldn't matter. I thought. Did Chafin involve in the suit against the county commission? Yes, Your Honor. Senator Chafin, or now Senator Chafin, was a commissioner himself. Yes, and accused of a crime, and he felt that under the common law of West Virginia, the county commission had a duty to reimburse him for his... Because he wasn't shown to have acted in bad faith. Yes, exactly. And the Supreme Court said he's entitled to be reimbursed his attorney's fees. When it comes to interpreting the special damages, the prejudicial interest statute, it doesn't matter what kind of action it is. You know, Mr. Carey's talking about a contract action versus some other kind of action. It doesn't matter. When the statute says what the statute says, these are the kinds of damages that meet the definition of special damages, it doesn't matter what kind of action it is. And so with Senator Chafin, when he spends money on a lawyer and the county commission, we all have to agree that they had a duty to reimburse him for those fees. There's no difference between that situation and our situation. And in that situation, the Supreme Court affirmed a trial court decision that those attorney's fees do not meet the definition of special damages. There is no reason for you to run counter to that established West Virginia law. Thank you. Let me please report. I want to address some of the issues raised by Mr. Parker. He states that I'm requesting an expansion of the law and that this court can't do that. Well, I don't believe it's an expansion of the policy previously stated, but this court has held that when a court sits in diversity jurisdiction, Mr. Graham's entitled to the same release as would be available in the state Supreme Court, and this court is obligated to look at what the West Virginia Supreme Court would do under the circumstances by looking at the various pronouncements of the law stated public policies of the state and well-informed dicta. So certainly this court can decide this issue. Mr. Parker also wants to adopt the definition of first party versus third party as if it is a uniform, unchallengeable definition. Well, there are treatises that say what first party and third party is, and in Loudon, 25 years after Hayseeds and Marshall were discussed, they say in a first party bad faith action and third party bad faith action, we look at the type of underlying insurance, and for those purposes in a dissent he discussed that. It has nothing to do with the phrase used in Marshall v. Sassin concerning underinsurance being first party insurance. The Morrison case decided three weeks after Marshall states, we based our decision in Hayseeds and Marshall on several cases dealing with first party insurance, and the first case they cited is Petrolo and automobile liability policy. He also wants to limit, Mr. Parker asked the court to consider the statements of Miller v. Plooharty as limited solely to cases involving underinsurance, but that's not what the opinion states. On page 318 it states, when an insurance carrier refuses to pay any type of first party claim, and in a parenthetical, including a claim for underinsurance benefits, so obviously they meant this statement to apply to all types of first party claims. They say it gives rise to the Hayseeds damages. He also wants to suggest that simply because in duty to defend cases you don't have a face value that somehow that means the Hayseeds damages don't apply. Well, I don't follow that argument. But quite frankly, some policies do because they're wasting policies and they have a duty to defend up to the amount of coverage. And the statement made in Hayseeds about normally it's going to be one-third is not an ironclad rule, so it doesn't prevent the court from looking to other means for calculating the attorney's fees. And finally on prejudgment interest, he states that Chafin answers the question. Chafin only answered it in isolation of that case. It didn't say that you can never receive prejudgment interest on attorney's fees. It didn't say that at all. It just said in the context of this mandamus action, where you're seeking repayment not from the person who caused you the injury or who breached the contract, but rather the public body from whom you're employed, we don't consider those the type of adequate expenses contemplated by the statute. West Virginia statute makes clear, and as said in Groves, must award prejudgment interest where they are special damages and readily ascertainable. Are they special damages in this case? Absolutely. Those were the monies that were owed to him under the contract, the duty to defend. They didn't pay them. They're special damages because those were the specific benefits entitled to under the contract. Were they readily ascertainable? Absolutely. By way of comparison, it specifically says in the statute, medical expenses are one of the types of special damages. If Mr. Graham had an automobile policy insurance that provided him MedPay benefits up to $5,000 and they didn't pay it and he recovered it, he'd be entitled to prejudgment interest. It's the same thing in this case with the attorney's fees. That was the specific benefit he was entitled to under the policy, and he's entitled to prejudgment interest. If there's nothing further, thank you very much. Thank you, Mr. Carey. We'll come down and greet counsel and take a short break.
judges: Robert B. King, Roger L. Gregory, Henry F. Floyd